Your Honors, first case on the morning call, 218-09-11, Hugo Soto and Sharon Soto, individually and similarly situated people, v. Great America LLC, on behalf of the Appellate, Mr. Curtis C. Warner, on behalf of the Appellate, Mr. Spencer S. Persil. Thank you, Mr. Warner. You may proceed. In this case, they printed the first eight digits of the plaintiff's card number in addition to the last four, printing a 12 out of 16 digits in total. The sole issue decided by the circuit court was whether plaintiff in this case had standing in Illinois to pursue their claims for statutory damages, a penalty of no less than $100. Claimants here are only seeking that minimum award of statutory damages. The damages provision of the FCRA are contained in two separate subsections. One for negligent causes of action, such as a mixed credit file of junior and senior, are typical of those types of cases, and willful damages, which we have alleged here. Claims were sufficiently alleged. Willful damages or willful injuries? I'm sorry, a willful conduct that provides then for statutory damages of no less than $100. On page two of the Great America's brief, they have now added some facts that were not in the complaint or before the circuit court, in that they had engaged in an update, they say. We don't know, because we were not permitted to take a discovery. It's, quote, for a short period of time, a technology upgrade caused some of Great America's printed receipts to include the first six digits of its guest payment card account numbers. We assert that that is a statement against their interests. So if there was an upgrade, does that mean it went from 12 or 10 down to six or more, or what? Or was it supposed to be a security upgrade that went awry and or amuck, and therefore, prior to the upgrade, it was in conformity with the statute, but due to a virus or a ghost in the shell that created this anomaly? Well, typically, because FACTA is a ubiquitous standard, it's supposed to be a uniform standard applied by merchants, written by Congress not to print the last five digits. The inference is that they were in compliance, only printing the last five digits of the card number. When the system upgrade occurred, they're now saying that only certain of their receipts were printing six digits. The plaintiff's receipts did not arise like at the gate or souvenirs. It was only with the food vendors only. Typically, and this is factual, there's a toggle that they click to change it from the international standards, which do print the first six. That's how, for example, Toshiba sets theirs up when they send it to United States companies. Then, in the process of formatting it, such as putting the name of each eatery, the sales tax for each state, Great America does this work in different states, they change all that information. It's a willful violation to know of an act, to know that there is a potential harm caused by it, because Congress, after hearing experts' testimony, decided that you shouldn't print more than the last five digits. Not to review these receipts. Instead, have them go live and are presented to customers. Should we know they were not reviewed? That's a factual question. The circuit court here determined it only on standing, and therefore, we were not able to pursue in discovery. The allegations and the complaints set forth the boldness. We said that by the contracts, they knew what the law was. In fact, at 845 of the record, there's a picture of what Visa card requires the merchants to truncate only printing the Visa example. There's 12 X's followed just by the last four digits. You moved this case from federal court because you didn't have Article III standing, is that correct, in the federal court? Your Honor, we originally filed this case in Lake County. The defendants had removed it to federal court. In federal court — So, but in federal court, you asked that it be moved back to state court because you didn't have Article III standing, is that correct? Under the Seventh Circuit's reading in Myers, there was a question of whether or not there was standing under that decision. We believe that Justice Thomas' concurrence to Spokio is correct, that Congress creates a harm and there's a private cause of action to that person. It's only in this case it would be all the cargoers who went to Great America and used a payment card there not for the world that large. Then there is standing to pursue whatever redress the court can give. And in this case, the redress is the minimum $100 statutory damages. Now, it's not uncommon that Article III would be used as a gatekeeper, as it is in federal court. In Illinois court, standing is different. The Supreme Court case in Oresko says that standing differs state by state depending on its constitution. And here, Illinois has had a 150-year tradition of allowing for private individuals to assert causes of action under a statute if the statute itself creates a penalty or statutory damages. But FACTA is a federal law. And shouldn't States be able to rely on the federal case law in assisting the trial court in this case here decide whether or not standing exists? Well, on substantive matters, I would agree, Your Honor. But on standing matters, no, they're completely different. I mean, in fact, if you look at the long history of Article III standing in the federal courts, it was enacted back in 1801, where it was briefly created. It only lasted a year. In 1875, it was then restored in its existence today. However, until the 1980s, there was actually a case in controversy requirement within all federal acts for federal questions until the 1980s. And those were then eliminated. But before that, before 1980s, these small claims cases, such as this for a minimum of $100, had to be brought into the state courts. So there's nothing really unusual of a federal law being enforced in a state court. That is the history of federal question jurisdiction. Article III is a gatekeeper. Congress doesn't want until the 1980s for the federal courts to determine smaller cases, and therefore, they're brought in state court. Now, Illinois has recently ruled in three different cases. This year alone, the Supreme Court in Rosenbach v. Six Flags, Duncan v. Federal Express, which is a First District case, and Lee in the business county known as the Body Shop. The last two cases, Duncan and FedEx, were facta cases that were brought in state court. And the state courts then find that there was standing because the statute itself allowed them to pursue a penalty. Illinois courts are courts of competent jurisdiction vested with the power to hear all cases. Is Duncan still viable? Yes, it is. It was set up for appeal, but then it appears that the parties resolved the case. One would assume, looking at the docket, that the defendant paid monies to the plaintiff in amounts significant enough for the plaintiff to resolve their individual case and to drop their class actions. But Duncan is viable law. It's also enforced by Rosenbach, which is a biometric case that only allowed for a statutory penalty of $500. Both the facta and the BIFA cases are the same in that the legislator has created a right of common law privacy for the plaintiffs to enforce through private causes of action. Now, these cases are different than other cases where, such as Mangalore, relied upon by the Supreme Court and the District Court. Counsel, let's go back to Duncan. Sure. What are the implications of a settlement after the issuance or publication of an opinion? That I'm not quite sure about, and it is still on the court's docket in the lower court. So we're not privileged at that settlement, so we don't know whether it's to return the case back to the circuit court for determination. There hasn't been looked at the docket. There hasn't been any filings of dismissal. So I can't really fully answer that question. You mean dismissal at the trial court, not at the Supreme Court? Correct, at the circuit court, the trial court. We don't know what the settlement is in the docket. It's blank about that, other than that there was some sort of stipulation to dismiss the appeal, which was brought by the defender. So as far as you know, there is no order vacating the opinion in Duncan? It doesn't appear. I have not seen one, Your Honor. The case of Lee against the body shop is very important as it really goes into the details of standing. It's that a statute intended to protect the consumers from a risk posed when credit card information is displayed on printed receipts at the point of sale. When an entity willfully fails to comply with FACTA's truncation requirements, FACTA provides a private cause of action for statutory damages and does not require the person to seek actual damages in order to seek recourse for a willful violation of the statute. This is consistent with the preventative and deterrent purposes of FACTA. The FACTA does create, through the statutory damages available, a private cause of action. It's not unlike the Maglio case where none of those provisions had with the statutory damages. I mean, for example, Illinois legislature is very clear that even some acts that require actual damages, if the actual damages are not there, the state's attorney general can step in and pursue the case on behalf of, you know, and there is standing. If there's damages and it's less than $100 per class member, is the judgment entered for less than $100 or is it entered for $100 based upon? According to the plain language of the FCRA's damage provision, it must be, you know, less than $100, period. It can't. The amounts that go up to $1,000, those are usually discretionary. They're based upon somewhat of a nature of repetitive violations. Well, why do you say that when the statute seems to say or? The statute does say or. You can have – it's the plaintiff's choice is what they want to pursue. They can pursue for willful damages, actual damages. I mean, for example, in these FACTA cases, the statute is so unbiased. So you can either get the actual compensatory damages or you can get the statutory minimum of $100, but you can't get both. That is correct. I mean, for example here, a person uses their credit card at Great America, and immediately after, the digits are printed out on the receipts in violation of the act, and the card has been compromised. Now, forget that that hadn't been perhaps the only purchase that they had made. They then might have damages that would be out there for the credit card being compromised that may have been in excess of $100. But on a FACTA case like this, it's easier to prove a willful than a negligent provision in that the statute is unambiguous. It allows only the printing of the last five digits. It's been around. Great America is under contracts by the card issuance entities and the merchant bank in which they have to comply with the act. So there is a choice in which they can go on. But the ORDA, it is conjunctive. It means that it is the plan of choice in which they want to pursue. Well, I don't know whether we're arguing about how many angels can dance on the head of a pin. But if the law is a duty of breach thereof and damage is approximately caused, and you're talking about intentional dereliction or violation of the statute as opposed to negligence, I don't quite see the distinction insofar as proving the breach. Well, yeah, it seems to me the problem is establishing what damages are approximately caused by the appropriate breach. Well, it's a deterrent. The statute was Congress had written it as a deterrent statute. If you look at Safeco, it's a Supreme Court case, willfulness is a wrongful reading of the law. The defendants at the time that they engaged in have to come up with the explanation of why they engaged in the act. That's under Hale Electronics, another Supreme Court case. And that if they've taken a course of action that is not a reasonable reading of what the law is, that is willfulness. It's also willful blindness. I see that my time is up. Any questions or further questions? Thank you. And you will have an opportunity to make your vote. All right. Thank you. Mr. Person, is that how you pronounce your name? It's Pearson, Your Honor. Pearson. But Person is fine because that's how it's spelled. Yes, it's missing an I. Good morning, Your Honor, and may it please the Court. The trial court decision in this matter should be affirmed for two reasons. One, under Illinois law, the plaintiffs don't have standing to pursue this matter because there is no harm, there's no injury. There's no injury in fact under Illinois law. And two, even if this Court were to find that plaintiffs did have standing for pleading purposes, there are two other reasons why the Court's decision should be affirmed. One, they haven't stated a violation of factor because the statute itself has ambiguity, ambiguity that's been recognized by courts over the years. Have you ever heard or read about the cases that involve nuisance fax advertising that are filed as a class action? And the basis is that the fax machine generates a piece of paper with ink on it, and that's a cost. Is there, therefore, injury for the recipient, the plaintiff member of the class? Yes, Your Honor, and the courts are split on that sort of an injury. You're referring to TCPA cases, I believe, and under the TCPA, I think the courts have been split on whether fax paper can be an injury. Some say that it can, some say that it can't. But the TCPA right off the bat is different than the FACTA. And it's different for this reason, and there's a couple of different case law, well, sorry, there's a couple different statutes that I think have a key difference here. And really, the TCPA, when was this passed? This was passed back in the 90s when I remember sitting with my family for dinner, and the phone would ring off the hook with marketing calls from about 5 o'clock to 7.30, and you couldn't sit there and have a conversation with your family. And so the TCPA was passed in order to give people back their privacy at home, and that was a privacy right that was invoked by Congress. Similarly, there was this talk of Rosenbach and BIPA and it being identical. What if, in this case, the plaintiffs had alleged that they were concerned that their credit was at risk and therefore spent money on credit reports and investigations and maybe even bought a prescription to whatever the LifeSafe or whatever Rush advertises, that if they claimed that those were expenses or costs based upon the allegations of psychic trauma, would that constitute actual damages? It would not, Your Honor, and because where an injury is not likely, where it's not imminent, where it's not distinct and palpable, which is the standard here in Illinois, you're not allowed to generate your own injury. So you have seen in a lot of cases, including in data breach cases, where folks will allege the sorts of things that you're talking about and allege that they spent time out of fearfulness, they spent money trying to get life-long protection. And there's been a number of cases, including the Stelmeckers case out of the Northern District of California, the Torres case out of the Middle District of Florida, saying you can't inflict injury upon yourself based on an irrational fear that you may suffer injury down the road. And so... What if it had been all the numbers? It might be different, and I think that there's a split among the circuits on that as well. What if it were all the numbers? And Kamal out of the Third District said, look, here was the first six digits, the last one, just like in this case. There's no injury there. There's no distinct and palpable injury. It's not likely. If it had been all 16, we might come to a different conclusion. The only district court that has come out and said that there is an injury post-spokio, where there's a fact of violation, was in the Jeffries case out of the D.C. Circuit. And in that case, it was all 16 digits plus the expiration date that was printed on the receipt. So it might be different in that situation. Does the plain language of FACTA provide for recovery in the, as an alternate, in other words, actual damages or statutory damages of no less than 100 to 1,000? So doesn't it provide that in statute? Sure. If it were a willful violation, it says that you would be entitled to either recover actual damages or statutory damages of 100 to 1,000 dollars per violation. But when Congress revisited FACTA after its passage under the Clarification Act, they made it very clear that they were worried about abusive lawsuits where there was no possibility of damages. They made it very clear that they only wanted someone to recover where there was this possibility or where there was actual injury. And so while that Clarification Act dealt with expiration dates, when they were talking about the purpose of FACTA, the tort can still look at what the purpose of FACTA was and why they passed it and what they were worried about. And they were worried about actual identity theft. They were worried about full card numbers. You know, the language of FACTA, which we believe is ambiguous, in part because it basically says you shall print no more than the last five digits or the expiration date. Well, if you look at the Broderick opinion, you know, they found that that was overbroad because that could potentially, if you read it literally, it could prevent you from printing other information that would make the receipt useful. You know, what did you buy? How much did you buy it for? Where did you buy it from? You may need those sorts of things to return it. And so what they said is the best reading of it, and it's the reading that's consistent with Congressional intent, is that you shall print no more personal identifying information on the receipt than the last five digits and the expiration date. And so why that's important is because the first six digits, they represent the issuing institution number. And that's publicly available. And so that could be found publicly. That could be printed on the receipt in plain English. And there would be no violation. And that's all that was done here. And that's why even in the Van Stratten case, which was relied on by the plaintiffs, the Van Stratten case talked about the fact that really what was important under the fact that – Pardon me for interrupting. I just want to make sure that I understand. You're no longer arguing standing. Now you're arguing injury. No, I think – well, I think injury and standing would be the same thing. I think what you're saying is I'm now arguing ambiguity. Well, you literally said no harm to the extent that there is no violation if they printed the name of the credit card company or the credit company. And so you're suggesting that there isn't a violation. You're not arguing standing anymore. That would be an alternative argument, Your Honor. I mean, that's what I thought I heard you say. Isn't that what you said? That's probably what I said. And I think, based on Your Honor's question, I think I jumped to the ambiguity section. But I think both of them, the reason why both understanding and under whether the statute is clear why they're both important is because they both require you to go look at congressional intent and what Congress intended to do here. And what they were worried about was protecting identity. So your point is we go – when we want to look at intent, we go to the clarification. When you're looking at whether – when you're talking about standing, the standard inquiry, and whether it's distinct and palpable, you look to what does the statute say, and you look to what was the statute intended to do where you otherwise don't see a harm. And that's what happened in the BIPA case in Rosenbach. And that's what has happened in the TCPA cases and the BPPA cases, where you look at what did they intend to do here with the statute. And in those cases, in Rosenbach, what happened was the Supreme Court said they created a right of privacy. They created a right of privacy here, and that's the invasion. But isn't that really what this is? No, and it can't be, Your Honor. Why? It can't be because what takes us out of BIPA, what takes us out is what are you doing when you hand your credit card to the merchant? You are handing over your personal information right off the bat. Right off the bat, you're giving them consent. As opposed to in Rosenbach, it was taken. Exactly. Without consent. And so right off the bat, you're giving a credit card to them that they have to have those numbers in order to charge them. So you're giving your consent. And what is given back to you? What's given back to you is a receipt with your information. It's not given to anyone else, at least not any more so than what is consented to. It's consented to give it to your bank and the card brand so that they know that you made the purchase. But there's no right of privacy in a receipt. And Congress didn't intend to create a right of privacy in a receipt. So that's what makes it different than BIPA. That's what makes it different than the TCPA. And that's what makes it different than the Video Privacy Protection Act where, you know, under that statute, you're not allowed. Why don't they write the statute in a way other than the way they've written it to protect the right of privacy and describe it in a way other than no more than five or six digits? Sure, Your Honor. And so there's two ways here that they could have written it. And the one way is by identifying that what should be printed is no more personally identified information. And that really seemed to be their intent when they talked about identity theft is they're worried about personally identifying information. The first six digits aren't that. They're the issuing institution number. And so that's why a lot of the federal courts have it. Well, does it make it a little bit easier for a thief or a hacker if they know what the person or know who the credit card issued by narrows their need to search numerous databases in order to come up with the information? That's certainly plaintiff's argument. It's a little bit like an address in the sense that it's a lot easier to find me if you know the street name. The number might be a little bit more difficult, but the street name, you know, helps. And so it may not be an invasion of privacy to give out my street address because you don't know whether it's north, south, east, or west. But as soon as you add a street number, you narrow it down markedly unless, of course, it's something like Main Street. I have a problem with the argument that the legislature can conjure up something clearer than what this is. And that's what your argument is. I'm trying to clarify in my mind what your argument is so I can either agree or disagree or ask more questions. And that is that you say that there's no privacy interest in a receipt. Well, if there's no privacy interest in a receipt and the alleged cause of action is supposed to be based upon an invasion of personal privacy, how does the legislature write it in such a way that it's enforceable or at least it's sufficiently clear that it's enforceable? Sure, Your Honor. There are – I see a couple of different questions in there, so if you'll excuse me for a second. There may be only one question, but there are several premises. Sure. And so I want to – let's talk about the possibility of harm and whether the first six digits create a piece of the pie that otherwise makes it easier. And, Your Honor, it would still be highly implausible that there could be any injury even if you do have the first six digits. Why? Because you still would need to figure out what the middle six digits are. All right? And the middle six digits, that could be up to a million permutations. What else do you need to figure out? So FACTA was based on Senator Feinstein when she was in – she was not a senator. She was in the legislature in California. It was based on a California statute that was passed in the early 90s. Back then, what happened in the early 90s? You didn't have the CBV number. So on top of guessing the middle six digits, you then have to also now guess the last – the three digits of your CBV. You also – there was not address verification back then. You don't have to guess the zip code. Now you do. The names aren't printed on their seats most of the time. So to your point, if you have your street name, could you more easily find you? Yes. But who are you? So you have so much more information that you have to find now that it makes it highly implausible that these six digits could in any way ever lead to any actual injury. Let me say this then. What's the remedy here for your client to continue to simply ignore the statute and print whatever it wants to print? What's the remedy? Well, Your Honor, look, as a factual matter, my client doesn't intend to do that. That's not the question. Sure. The question is, they have done what they have done. What is the remedy? The remedy here is that there can be no injury for the plaintiffs, and so there is no remedy. No, no, no. That's an argument that you're making, that they have not – they don't have a cause-of-action basis is what you're arguing. But your client has violated the statute, certainly the letter of the law. What is the remedy? You keep arguing, well, this isn't – this isn't private information, that's not private information. It doesn't distinguish that. It simply says you cannot print more than these digits. So when you do that, what is the remedy? Or has Congress created a statute with no remedy? Congress has created a statute with remedy where, like we said earlier, if they had printed all of the digits, they might be different. It doesn't say that. It doesn't say – it doesn't say that. I mean, we're stuck with what it says. It doesn't say all of the digits. It doesn't say personal information. I agree with you it is not the most well-crafted statute. But nonetheless, to create a right without a remedy, what are we supposed to do with it? Just say, well, you know, no harm, no foul? Your Honor, I see my time has expired. May I answer your question? Oh, yes. You may answer that question. Yes, Your Honor. I think that there are a lot of statutes where there's no private right of action and where there wouldn't be a remedy for an individual plaintiff. And I think this would be one of those instances where there's no injury, there would be no standing under Illinois. And so there would be no remedy in this instance because there could be no injury. We disagree with the premise that the statute is perfectly clear, but that would be my answer to your question, Your Honor. Okay. Based upon your arguments, it seems like there's no remedy at all because you're not only suggesting that there's no statutory remedy, you're suggesting that it's impossible to establish based upon the information that the statute prohibits or requires, the limits, will not result in any harm. Your Honor, I don't think that that's exactly my argument. Okay. Let me clarify if you'll allow me. Yes, please. I think that there's no remedy in this instance because there's no statutory remedy. That wouldn't be my argument. Someone whose full credit card number was printed and separate. But that isn't what the statute says. And the reason why the statute is not clearly written, even they don't even define card number consistently within the statute itself. If you look at 1681CG1 and 2, they define it two different ways, or they talk about it in two different ways. And so what is a card number? A personal card number is the middle nine digits of a card number. The bin belongs to someone else. It belongs to the issuing institution. And the check digit is a algorithm.  I think that if the full card number had been printed, if somebody had actually suffered damage, because that's what Congress is worrying about, actual damages, actual harm, actual identity. I have a question. Illinois courts have held that determining whether or not there has been willful conduct requires close scrutiny of the facts. So my question is, in light of what the trial court has done here, how can the issue of willfulness be decided in this motion to dismiss? Sure, Your Honor. And the trial court didn't make a decision on willfulness in this instance. But the answer to your question is, this is a two-tiered liability scheme, one where there's negligence, one where there's willfulness. All that has been pled by the plaintiffs is that they were on notice from Visa and MasterCard that this had to happen. They should have been on notice of the law. Those things would apply to literally any company that accepts credit cards. It would read the two-tiered liability scheme out of the statute. There has to be something more pled there specific to the defendant. And so that's why, even at the motion to dismiss stage, that willfulness could be a basis for dismissing this item. Okay. And the last question I have is, you say in your brief, Greer, I think it's versus Illinois Housing Authority, and you take the position that in Greer that the courts essentially should follow the federal court law in establishing that it requires injury in fact. Isn't that what you allege in respect to Greer? Your Honor, I believe what we said about Greer is that they essentially did discuss federal standing law in adopting the standard of succinct and palpable, which in the 80s was the federal standard. It's now become concrete and particularized. But doesn't Greer essentially hold that for trial courts that they don't have to follow the federal standing requirements? Your Honor, it says it's not as restrictive as the federal requirements. It's more liberal, right? It suggests it's more liberal, but, Your Honor, there hasn't been a case in Illinois that I've seen that has stated what that distinction is or applied that distinction any differently than any federal case. Thank you, Your Honors. Thank you. Thank you. Mr. Warner, you may proceed. Thank you. The defendant is incorrect about there not being a harm here. There is a harm. There is the risk of harm, as Congress, after listening to experts, so found. In fact, the statute has timing language within it. It's that the receipt has to be provided at the point of sale or transaction to trigger the liability. Here, plaintiffs on previous occasions have mindlessly thrown away the receipts at Great America on previous trips there to the amusement park. You get your coney dog. You get your Slurpee. You throw your receipts away with your trash. Congress understood this. Congress knew it. Congress had hearings about it, and they talked to experts. What the defendant says is that the judiciary should intervene and say, no, Congress really didn't mean it. What they really mean is this. And here's all this other complicated things that you should really look at, including logarithms. Don't you know that hackers use logarithms to crack codes? And, in fact, private information is presented here, a person's banking information. I think of my grandma receiving a call, and they would say, Helen, this is Bank of America calling. We have your Macy's card here, and we're seeing some suspicious activity. It ends with the account number 1234. They would not have that information if they didn't have the banking information in the first six digits. That's what Congress tried to resolve here. If you want to look at legislative intent, Congress is full of it, going through and telling exactly what it is. In fact, the Clarification Act, that only dealt with the expiration dates, and that is where this confusion and this cancer starts to grow from court to court. It's based upon defendants' arguments saying the Clarification Act says it's actual identity theft. That's not correct. Within the Clarification Act itself, it says, quote, experts in the field agree that proper truncation of the credit card by itself, as required by FACTA, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud. The legislative intent is very clear of what the statute is supposed to protect. It is upon the risk of harm of private information of a third party getting involved. For example, if you want to use defense counsel's argument about the TCPA phone calls at dinner, well, he'd like to shift the burden on his family to stop those calls. That's the same thing here. It is the business's burden and duty to stop printing numbers on the receipts, and if they violate it, a plaintiff has a private cause of action to seek that bounty of $100 as a private attorney general to stop them from doing it as a deterrent. So as Congress read them, so as Congress said. Counsel, do you agree that most federal courts view the failure to follow FACTA truncation requirement as a mere technicality? They have been split, and it grows out of this cancer in Broderick, which happened to do with just the printing of the first digit. Chief Judge Yonker of the Western District of Michigan, who I've appeared before, likes to see some sort of a sinister in his cases, something really, really bad. He doesn't like technical arguments, and he viewed this one as a technical argument. But if you look at the thought notes in that, also, he said the visa card requirements said that you've got to print the word visa on it, so what's the difference? Well, that's not what the statute said, but he didn't see this as being such a bad violation, especially if the visa card requirements said that. Now, that would be, I would say, would go to willfulness. It comes out probably right under willfulness. You, however, we have alleged and we know that there are requirements by these card companies to say don't do it. They have actual knowledge. In fact, on page two, it is an omission that they were doing it right, and they just decided, well, we just didn't do it on this one. We didn't look at our receipts. And that is what it is to stop. It is you know there's a risk, and yet you engage in it, and you do nothing to prevent it. And defense argument is, well, so what? That's what it is. And Congress wrote something else, or they could have wrote it differently. But that's why there's the penalty, the bounty, the statutory damages, $100 to allow private individuals to bring a cause of action in Illinois courts for standing. And I think that Justice Clarence Thomas is actually correct in his concurrence, where he says that if Congress has created an individual cause of action that addresses a harm as to the plaintiffs themselves, they have the ability to enforce that. Illinois courts are more liberal in standing, and therefore this court should reverse the circuit court's opinion and remand for further proceedings. If there's no other questions, I rest. Thank you. Timing is everything. Great timing. There are no further cases on the call.